# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | Consolidated Under |
| LIABILITY LITIGATION (No. VI) | : | MDL DOCKET NO. 875 |
| | : | |
| MAYNARD HERMAN, et al. | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 17-1602 |
| | : | |
| AMETEK, INC., et al. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    June 28, 2017

Presently before the Court is Plaintiff's motion to remand the action to the Court of Common Pleas of Philadelphia. For the reasons that follow, the Court will grant the motion.

**I.   FACTS AND HISTORY**

This is a personal injury asbestos action, originally brought in state court, in which Plaintiffs allege that Maynard Herman sustained occupational exposure to asbestos for which the Defendants are responsible. As a result of this exposure, Mr. Herman contracted Mesothelioma.

On April 7, 2017, Defendants removed the case to this court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, asserting diversity jurisdiction. Since Defendant Ametek, Inc. is a citizen of Pennsylvania, the state in which the case was brought, 28 U.S.C. § 1441(b)(2) would typically bar

jurisdiction. However, Defendants assert that Plaintiffs fraudulently joined Ametek in order to defeat removal and, as a result, the Court may disregard Ametek's citizenship. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921); In re Briscoe, 448 F.3d 201, 215-16 (3d Cir. 2006).

After removal, Plaintiffs filed this motion for remand arguing that their joinder of Ametek as a defendant was not fraudulent since Ametek is liable as a successor for Mr. Herman's exposure to asbestos containing products produced by Haveg Industries. Plaintiffs acknowledge that when Ametek bought Haveg in 1980, the agreement facially concerned only the purchase of the latter's assets, and that the default rule in Pennsylvania is for successor non-liability. However, they correctly assert that there are several recognized exceptions that could create successor liability between Ametek and Haveg. See Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 468 (3d Cir. 2006). Specifically, if Ametek's purchase of Haveg was actually a de facto merger of the two corporations or served as a mere continuation of Haveg, Ametek would legally be considered Haveg's successor regardless of how the contract between them was framed. Id.

## II. STANDARDS

On this motion for remand under 28 U.S.C. § 1447(c), the Court's task is not to decide whether Ametek actually is a

2

mere continuation of Haveg's operations such that successor liability should apply. Instead, strictly construing the arguments against removal and resolving all doubts in favor of remand,[1] the Court must determine whether the Defendants have met their heavy burden of establishing that there is no reasonable basis for Plaintiffs' successor liability claims – that there is not the slimmest possibility that the state court could find in their favor and, instead, could not but conclude that their claims are wholly insubstantial and frivolous. <u>Briscoe</u>, 448 F.3d at 217-18.

The factors a court should consider in determining whether a transaction amounted to a de facto merger or a mere continuation are: (1) the existence of some sort of proof of continuity of ownership or stockholder interest; (2) the cessation of the ordinary business by, and dissolution of, the predecessor; (3) the assumption by the successor of the obligations or liabilities ordinarily necessary for the uninterrupted continuation of the business; and (4) a continuity of the management, personnel, physical location, and the general

---

[1] In cases where the government contractor defense is implicated, removal is favored and the burden of proof necessary to win a remand is much different than under Section 1447(c). <u>In re Asbestos Prod. Liab. Litig. (No. VI) (Barnes)</u>, 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011) (citing <u>Sun Buick, Inc. v. Saab Cars USA, Inc.</u>, 26 F.3d 1259, 1261 (3d Cir. 1994)). Although this issue arises with frequency in asbestos-related cases, it is not present here.

business operation. Fizzano Bros. Concrete Prod. v. XLN, Inc., 42 A.3d 951, 969 (Pa. 2012); Cont'l Ins. Co. v. Schneider, Inc., 810 A.2d 127, 135 (Pa. Super. 2002), aff'd, 873 A.2d 1286 (Pa. 2005).

Although a court must consider all four factors, "all need not exist before" finding successor liability. Schneider, 810 A.2d at 135.[2] Similarly, these elements "are not a mechanically-applied checklist, but a map to guide a reviewing court to a determination that," "for all intents and purposes, a merger has" occurred. Fizzano Bros., 42 A.3d at 969.

In determining whether removal jurisdiction exists, the Court may "look to more than just the pleading allegations to identify indicia of fraudulent joinder" as long as it does "not step 'from the threshold jurisdictional issue into a decision on the merits.'" Briscoe, 448 F.3d at 219 (quoting Boyer v. Snap-on Tools Corp., 913 F.2d 108, 112 (3d Cir. 1990)).

---

[2] The Pennsylvania Supreme Court has held that in the context of contract cases, the reviewing court must at least find continuity of ownership. Fizzano Bros., 42 A.3d at 969. However, it left open the question of whether, in tort cases, "the continuity of ownership prong may be relaxed." Id. at 966-67. In considering a motion for remand based on diversity removal, the court must resolve any uncertainty in the law in favor of the plaintiffs. Brisco, 448 F.3d at 219. Thus, although it is not strictly necessary in this case, the Court will review the continuity of ownership prong in a relaxed manner.

4

**III. DISCUSSION**

    **A.    The Continuity of Ownership**

Plaintiffs have produced "some proof" of continuity of ownership between Ametek and Haveg through John Lux. Specifically, Plaintiffs assert, citing business documents and deposition testimony, that: (1) Mr. Lux was one of Haveg's owners in 1964; (2) after Hercules Inc. bought Haveg in 1964 as a wholly-owned subsidiary, Hercules gave Mr. Lux a seat on its board of directors; (3) in 1966, Mr. Lux became the president and CEO of Ametek and, after the sale of Haveg to Ametek in 1980, was the chairman of Ametek's board of directors.

Resolving all doubts in favor of Plaintiffs, the Court finds that this factor supports a possibility of successor liability and Defendants have failed to show otherwise.

    **B.    The Cessation of Business**

Regarding the cessation and dissolution of Haveg, Plaintiffs note that as part of the purchase agreement, Haveg was required to change its name and cease using Haveg trademarks. Defendants counter that the purchase agreement also provided that Haveg (and Hercules) were required to indemnify Ametek and that they retained most liabilities, including those regarding asbestos injury. They argue that this indicates that Haveg continued to exist after the sale of its assets. It is

unclear from the record in what capacity Haveg survived, but it is clear that it did not survive as "Haveg."

The Pennsylvania Supreme Court indicated that the cessation of ordinary business prong might be met if, as a result of the asset purchase agreement, the transferor company essentially ceased operating or had become dormant. Fizzano Bros., 42 A.3d at 971. Here, it appears that Haveg did continue to exist, but it is not clear in what capacity. Thus, resolving all doubts in favor of Plaintiffs, the Court concludes that this factor also supports a possibility of successor liability and Defendants have not established otherwise.

### C. The Assumption of Obligations

Regarding what liabilities and obligations Ametek assumed as part of the purchase agreement, Defendants contend that it did not assume any relevant liabilities. However, as indicated by Plaintiffs, Ametek did assume all of Haveg's accounts payable, its rights and obligations under existing contracts, its related purchase and sales orders, and its obligations regarding salary payments and vacation time for retained employees. The aforementioned obligations are exactly the type which the Pennsylvania Supreme Court indicated would allow the continuation of business and could meet this prong. Id. at 972. Thus, this prong also suggests the possibility of

successor liability despite Defendants' protestations to the contrary.

**D.     The Continuity of Business Operations**

Defendants raise no real argument that this prong is not met. Thus, they have failed to meet their heavy burden of proof. Nonetheless, Plaintiffs provide that, according to the purchase agreement, Ametek bought "substantially all of the assets, property and business" of Haveg, (Purchase Agreement ECF No. 11-3 at 10), including Haveg's real property, fixed assets, accounts receivable, inventories (other than its asbestos inventory), the right to use the name "Haveg" and all brand-related intellectual property, the technology and "know-how" of the business, and the right to take possession of the books and records.

Through citation to deposition testimony, Plaintiffs also contend that Ametek retained certain of Haveg's key employees including managers and engineers, as well as line workers and security guards. They assert that Ametek also continued to produce the Haveg product line, used the same labels, and offered repair services for older Haveg products. Plaintiffs conclude that:

> [t]he retention of Haveg personnel, the acquisition of substantially all of its assets, the continued marketing of its products, use of its product labels and material safety data [sheets], and acquisition of all of Haveg's intellectual property, existing

7

business relationships, and good will were all clearly
intended to permit Ametek continue Haveg's operations
seamlessly.

(Plaintiffs' Motion ECF No. 33-1 at 9).

The Court agrees that, at this stage of the proceedings, this factor, as well as the previous three, indicates the possibility of successor liability, and, thus, remand to state court is required.

## IV. CONCLUSION

Construing all of the arguments against removal and resolving all doubts in favor of remand, the Court concludes that Defendants have not met their heavy burden of establishing that Plaintiffs' claim of successor liability has no reasonable basis and is wholly insubstantial and frivolous. <u>Briscoe</u>, 448 F.3d at 217-18. Thus, Plaintiff's motion for remand must be granted.

An appropriate order follows.